IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joseph Alexander Dionisa Quinonez, <br><br> Petitioner, <br><br> v. <br><br> SAM OLSON, Field Office Director of Enforcement and Removal Operations, Chicago, IL, Immigrations and Customs Enforcement, TODD M LYONS, Acting Director of U.S. Immigration and Customs Enforcement, KRISTI NOEM, Secretary, U.S. Department of Homeland Security, and PAMELA BONDI, United States Attorney General <br><br> Defendants. | No. 25 CV 13524 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

The petition for a writ of habeas corpus [1] is granted in part. Within five days of this order, the petitioner must be provided with a bond hearing before an Immigration Judge ("IJ"). Absent a timely bond hearing, the respondents are directed to release the petitioner under reasonable conditions of supervision until such a bond hearing has been provided. This order is based on this Court's finding that 8 U.S.C. § 1225 (b)(2) does not apply to the petitioner, as explained below.

## BACKGROUND

The petitioner, Joseph Alexander Dionisa Quinonez, is a citizen and national of Guatemala. Pet. 11 ¶ 45, ECF No. 1. He arrived in the United States in May 2024. Resp. 1, ECF No. 9. When he entered the country, immigration officials processed him and released him on his own recognizance. Pet. Ex. A, at 4, ECF No. 1-1. He was also issued a Notice to Appear at that time. Status Report 1 ¶ 2, ECF No. 8.

Immigrations and Customs Enforcement (ICE) officers arrested Quinonez on November 4, 2025, detaining him in Broadview, Illinois. Pet. 2 ¶¶ 1, 4. While in the Broadview Processing Center, Quinonez filed a petition with this Court for a writ of habeas corpus. Resp't's Status Report 1 ¶ 1. The petitioner's Notice to Appear scheduled him to appear before an immigration judge on December 10, 2025. Resp. Ex. 1, at 1, ECF No. 9-1.

The plaintiff's petition alleges violations of the Fifth Amendment right to due process, the Immigration and Nationality Act (INA), and the Administrative Procedure Act (APA), stemming from his detention without a bond hearing. *Id.* at 11–15. As in many similar cases litigated in this district, the government argues that 8 U.S.C. § 1252 strips this Court of jurisdiction to hear this case, and that the petitioner is not entitled to a bond hearing under the INA. Resp. 2, ECF No. 9. The Court first considers, as it always must, whether it has jurisdiction to hear this case.

## ANALYSIS

### I. Jurisdiction

To start, this Court has jurisdiction to adjudicate the habeas petition presented in this case. 28 U.S.C. § 2241. The parties agree that at the time of filing this petition, the petitioner was detained at ICE's Broadview Processing Center in Illinois. Resp't's Status Report 1 ¶ 1. This Court has jurisdiction over habeas petitions that were filed while the petitioner was present within its geographical boundaries, despite the subsequent transfer of the petitioner to another district. *See In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021) ("[A] prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction."); *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022). Thus, even if the

petitioner has been transferred to Indiana or Wisconsin, Resp't's Status Report 2 ¶ 3, that would have no effect on this Court's jurisdiction.[1]

Respondents claim that this Court is statutorily barred from hearing this case because the INA contains a variety of jurisdiction stripping provisions, codified at 8 U.S.C. § 1252.[2] Respondents argue that three such provisions prevent this Court from hearing the petitioner's claim. None does.

### A. Section 1252(g)

The respondents first point to § 1252(g), arguing that it strips this Court of jurisdiction to review the decision to detain the petitioner. Ex. 2 Mem. 4–6, ECF No. 9-2. That provision states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." § 1252(g). Because ICE detained the petitioner in connection with their intent to commence removal proceedings against him, *see* Resp't's Status Report 1 ¶ 2, respondents contend their decision to detain him "arises from" their decision to commence those proceedings. Ex. 2 Mem. 4.

The respondents' analysis flies in the face of the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee*. There, the Supreme Court held that § 1252(g) did not apply to anything beyond those "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" 525

---

[1] The government's status report advised the Court that such a transfer was expected, but neither party has confirmed whether that has occurred.

[2] In their response to the petition, respondents attach a memorandum written for another case, explaining that it "presents the arguments that respondents wish to reiterate in this case." Resp. 2. As such, the Court assumes that where the facts of this case are substantially similar to the facts discussed in the attached memorandum, the respondents intend to make the same argument in this case.

U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [the language in § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.").

Contrary to the respondents' argument, the Ninth Circuit's decision in *Sissoko v. Mukasey*, 509 F.3d 947 (9th Cir. 2007) is inapposite. Ex. 2 Mem. 5. In *Sissoko*, unlike here, the petitioner sought damages under *Bivens*. *Id.* at 948. Section 1252(g) applied in *Sissoko* because the petitioner "directly challenge[ed] [the respondent's] decision to commence expedited removal proceedings." *Sissoko*, 509 F.3d at 950. Moreover, the Ninth Circuit stressed the fact that there was an alternative option available to the petitioner in that case: he could have sought habeas relief. *Id.* That is exactly what the petitioner did here. *Sissoko* therefore does not support the respondents' arguments.

The petitioner does not challenge a decision to commence removal proceedings, adjudicate a case against him, or execute a removal order. Rather, he challenges the decision to detain him without a bond hearing. Because that decision is not one of the three listed in § 1252(g), this Court's ability to review it is not precluded by that section.

### B. Section 1252(b)(9)

The next INA provision respondents cite in support of their argument that this Court lacks jurisdiction to hear this case is § 1252(b)(9), which provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. . . . [N]o court shall have jurisdiction . . . to review such an order or such questions of law or fact.

Respondents contend this section means that petitioner's detention, which arose out of respondents' attempt to remove him from the country, cannot be reviewed until a final removal

order is issued, and then only by a circuit court. Ex. 2 Mem. 7. That's because § 1252(a)(5) says that the only judicial review of a removal order is through a petition filed "with an appropriate court of appeals." Respondents thus read these two provisions as working together to divert all claims relating to removal proceedings to a court of appeals post-removal order. Ex. 2 Mem. 7.

Again, the government construes the statutory text too broadly. A careful reader will notice that the language in § 1252(b)(9) is similar to that in § 1252(g)—the words "arising from," which the Supreme Court in *Reno* interpreted narrowly, appear again. Indeed, the Court later held in *Jennings* that § 1252(b)(9) did not bar it from hearing a petition alleging that the plaintiff's detention was overly prolonged in violation of due process. 583 U.S. at 291, 294–95. Just like the petitioner in *Jennings*, the petitioner here is not "challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined." *Id.* at 294. Rather, the petitioner is challenging his detention under § 1225 and his entitlement to a bond hearing. *Jennings* holds that § 1252(b)(9) does not bar this Court from hearing his claim.

It is no answer to say, as did the concurrence in *Jennings*, that detention is an action taken to facilitate removal of an alien. Even assuming that fact, the Court observed, it does not answer the relevant question: whether the legal questions presented by the petitioner's claims—such as whether "certain statutory provisions require detention without a bond hearing"—arise from the actions taken to effect removal of an alien. *Jennings*, 583 U.S. at 292. "Those legal questions," the Court held, "are too remote from the actions taken to fall within the scope of § 1252(b)(9)." *Id.* at 295 n.3.

5

### C. Section 1252(a)(2)(B)(ii)

The final portion of § 1252 that respondents argue strips this Court of jurisdiction is § 1252(a)(2)(B)(ii). That section provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." The government's brief points out that § 1226 confers discretion upon the Attorney General in granting bail. Ex. 2 Mem. 9. It is true that the decision to grant or deny bond is discretionary. 8 U.S.C. § 1226(a), (e). But the petitioner is not challenging that decision. How could he? Respondents claim he isn't entitled to a bond hearing in the first place, so no such decision has been rendered. Instead, the petitioner challenges the government's authority to detain him under § 1225 rather than § 1226, a question that is not committed to the discretion of either the Attorney General or the Secretary of Homeland Security.

Because none of the provisions in § 1252 bar this Court from hearing the petitioner's claim, this Court continues to the merits of the petitioner's INA and due process theories. Because the Court finds that petitioner is entitled to a bond hearing on the basis of those theories, it does not reach the APA theory of relief.

## II. Exhaustion

Respondents argue that this Court should require the petitioner to exhaust his administrative remedies (that is, to request a bond hearing by an IJ, pursuant to 8 C.F.R. § 1236.1(c)(8), (d)(1) (2025)), despite the lack of a statutory requirement to that effect. Ex. 2 Mem. 23. As respondents correctly point out, this Court may require exhaustion in its "sound judicial discretion." *Gonzalez v. O'Connell*, 355 U.S. 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). The Seventh Circuit has said, however, that exhaustion

6

should be excused when it would be "futile because the agency is biased or has predetermined the issue." *Id.* at 1016. As discussed below, the Board of Immigration Appeals ("BIA") has already decided that aliens like the petitioner are not entitled to bond hearings, a decision that binds immigration courts.[3] Requiring exhaustion in this case would therefore be futile, and the Court declines to impose such a requirement.

### III. Proper Respondents

One preliminary matter that the Court must address before turning to the merits is the question of the proper respondents. The Supreme Court has held that "core" habeas petitions—in other words, petitions challenging the lawfulness of the petitioner's present physical confinement—must name the "person who has the immediate custody of the person detained, with the power to produce the body of such party before the court or judge." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Thus, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. The Seventh Circuit has held that this rule applies where a noncitizen challenges the legality of their detention in the immigration context. *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Accordingly, Sam Olson, Field Office Director of Enforcement and Removal Operations for Chicago, is the proper respondent in this case. Other officials named as respondents—Todd M. Lyons, Kristi Noem, and Pamela Bondi—are dismissed from the case.

---

[3] It bears noting that the government's argument that the petitioner should be required to request a bond hearing by an IJ appears to be inconsistent with its argument that the petitioner is being detained under 8 U.S.C. § 1225(b)(2) rather than 28 U.S.C. § 1226(a); only aliens detained under § 1226(a) can request a bond hearing under 8 C.F.R. § 1236.1.

IV. **Statutory Framework for Detention**

The INA outlines procedures for the detention of aliens. Respondents claim they are statutorily entitled to detain the petitioner under § 1225(b)(2), which applies to alien "applicants for admission." Petitioner, on the other hand, contends that § 1225 does not apply to him and that his detention is governed by § 1226(a) instead. The key difference between the two statutory provisions is that § 1226(a) provides the Secretary of Homeland Security discretion to release aliens on bail, while § 1225(b)(2) mandates detention of aliens "seeking admission" until the alien's removal proceeding concludes, so long as the alien is not deemed "clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

If one were to read only § 1225, or only § 1226, one would likely think that the section they read applied to the petitioner in this case. After all, § 1225 purports to apply to all "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted." § 1225(a)(1). The government argues that "applicant for admission" therefore covers "all unadmitted foreign nationals in the United States . . . regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." Ex. 2 Mem. 14. There is no dispute that the petitioner is an unadmitted foreign national present in the United States. Section 1225 generally requires the government to detain those individuals if they are "seeking admission." § 1225(b)(2)(A). "Admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101 (a)(13)(A). The government argues that the petitioner is "seeking admission" because he has never been lawfully admitted to the United States. Ex. 2 Mem. 15. And because he hasn't agreed to depart, they say, he must endeavor to remain, meaning he seeks admission. *Id.* at 16.

The government's understanding of § 1225's scope is expansive, but plausible, when read in isolation. But of course courts do not read statutory phrases, like "seeking admission," in isolation; "we read statutes as a whole." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). And when § 1225 is read in context with § 1226, it is plain that the government's reading of § 1225(b)(2)—that all deportable aliens are "seeking admission" by remaining in the country and are therefore subject to mandatory detention—is overly expansive. Section 1226(a) generally permits the Secretary either "to detain the alien or to release him on bond or parole. If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge." *Nielsen v. Preap*, 586 U.S. 392, 397 (2019) (citing 8 CFR §§ 236.1(c)(8), (d)(1), 1003.19, 1236.1(d)(1) (2018)). "[T]he alien may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Id.* at 397–98 (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)). If, as the government maintains, § 1225 mandates detention of all unadmitted aliens in the United States, then to whom does § 1226 apply?

Even if reasonable minds could disagree on the proper interpretation of § 1225 and § 1226, this Court is bound to follow the Supreme Court's decision in *Jennings v. Rodriguez*, which answers this question. In *Jennings*, the Court explained that § 1225 applies to "certain aliens seeking admission into the country," while § 1226, in contrast, is a "default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 289, 303; *see also Nielsen*, 586 U.S. at 396–97 (holding that section 1226(a) applies to most deportable aliens "present in this country"). Far from applying to all unadmitted aliens, *Jennings* explains that § 1225 applies to aliens at the border—those who "arrive[] in the United States" and are "seeking admission into the

9

country." 583 U.S. at 287, 289. Section 1226, on the other hand, applies to aliens present in the country who were inadmissible at the time of entry. In short, § 1225 applies to those attempting to enter the country, while § 1226 applies to those who are already here.

*Jennings*'s interpretation of § 1225 and § 1226 reconciles these two otherwise incongruous provisions in a manner that comports with the surplusage canon, one of the standard tools of statutory construction. The surplusage canon directs that courts should generally give meaning to each part of a statute, especially when a whole portion would be rendered meaningless. *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("When a statutory construction thus 'render[s] an entire subparagraph meaningless,' this Court has noted, the canon against surplusage applies with special force."). Earlier this year, Congress passed the Laken Riley Act, which excepts unadmitted aliens who are charged or convicted of theft offenses from bond eligibility. § 1226(c)(1)(E); 8 U.S.C. § 1182(a)(6)(A). If, as the respondents argue, all unadmitted aliens are already subject to mandatory detention under § 1225, that would render the Laken Riley Act meaningless and violate the surplusage canon.

The government relies on the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that immigration judges have no authority to issue bond to aliens "present in the United States who [have] not been admitted after inspection." *Id.* at 216, 229; *see* Ex. 2. Mem. *passim*. But *Hurtado* does not address, or even acknowledge, the Supreme Court's reconciliation of §§ 1225 and 1226, which this court is bound to follow. The BIA, by contrast, has no authority to bind this Court, which must undertake its own review of the statutory issues presented here. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."). This Court may, however, look to longstanding agency practice

10

to inform its understanding of the relevant statutes. *Id.* at 386. The "longstanding agency practice of providing § 1226(a) bond hearings to noncitizens like [the petitioner]," *Ochoa Ochoa v. Noem*, 25-cv-10865, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 16, 2025), therefore supports this Court's conclusion that *Yajure Hurtado* is incorrect. The petitioner is not "seeking admission" under § 1225, but instead is already present in the country and so comes within the ambit of § 1226(a).

V. **Due Process**

The petitioner urges that his continued detention violates due process. Pet. 6. In response, the government contends that because the petitioner never lawfully entered the country, he has only those due process rights afforded to him by Congress. Ex. 2 Mem. 9–14. It is true that Congress may prescribe the rights due to "an alien at the threshold of initial entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). But the Supreme Court has made clear that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

Unlike the petitioner in *Thuraissigiam*, who was detained within twenty-five yards of the border, 591 U.S. at 114, the petitioner has been living in the United States for over a year. Because the petitioner is within the United States, he is entitled to the full protections of the Due Process Clause.

In determining what process is due, courts must consider "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards;

11

and third, the government's countervailing interests." *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The petitioner's interest in his own liberty is great. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). The risk of erroneous deprivation is also great, because without a bond hearing no judge can determine whether the petitioner should remain in custody. *Miguel*, No. 25-cv-11137, at *13 (N.D. Ill. Oct. 21, 2025). True, the government has an interest in ensuring the petitioner does not abscond and in avoiding the costs of a bond hearing. But those interests are not enough to outweigh the petitioner's significant interest in his own liberty. The government already determined when the petitioner entered the country that he could be released on his own recognizance, Pet. Ex. A, at 4, and the cost of a bond hearing is minimal. The *Mathews* factors indicate that due process compels a bond hearing.

The Supreme Court's precedents support this conclusion. The Court has recognized that where liberty is at stake in a civil proceeding, as here, the government's interest must be especially strong.

> [T]his Court has said that government detention violates [the Due Process Clause] unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and "narrow" nonpunitive "circumstances," where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation modified). Without a special justification, the respondents cannot constitutionally deprive the petitioner of a bond hearing. A criminal record

12

that includes serious crimes provides such justification, per § 1226(c), but the bare fact of presence in this country without admission provides no such justification.[4]

The Court also follows the lead of the "overwhelming consensus" of other courts granting immigrant habeas petitions that have placed the burden on the government to show clear and convincing evidence that the detainee poses a danger or flight risk at the bond hearing. *See Ochoa Ochoa*, 2025 WL 2938779, at *8. Placing the burden on the government, rather than the petitioner, "reflects the concern that a noncitizen 'should not have to share the risk of error equally' in the context of a due process violation and [his] 'loss of liberty.'" *Id.* (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

---

[4] The respondents point to *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) for the proposition that foreign nationals have no due process right to a bond hearing, but *Parra* involved a petitioner who qualified as a "criminal alien" under § 1226(c) and its evaluation of the *Mathews* factors appropriately took that status into account. The case does not hold that mandatory detention of all unadmitted foreign nationals present in the United States, regardless of their criminal histories or other circumstances, comports with due process.

\* \* \*

No jurisdictional provision of the INA bars this Court from hearing the petitioner's case, nor is exhaustion required. The respondents may only detain petitioner under § 1226 of the INA, which allows for bond hearings, not § 1225. Moreover, due process entitles the petitioner to a bond hearing. Based on the foregoing, if a bond hearing before an IJ has not been conducted within five days of the issuance of this Order, the respondents are directed to release the petitioner under reasonable conditions of supervision until such a bond hearing has been provided. The parties are directed to file a status report upon the occurrence of a bond hearing or the petitioner's release.

The Clerk is directed to terminate Respondents Todd M. Lyons, Kristi Noem, and Pamela Bondi, and alter the case caption accordingly.

Date: November 14, 2025

John J. Tharp, Jr.
United States District Judge